STATE OF IOWA, Appellee, v. FRED CHRISTENSEN, Appellant.

DECEMBER 13, 1927.

REHEARING DENIED MARCH 17, 1928.

*John H. Meyers*, for appellant.

*John Fletcher*, Attorney-general, *Neill Garrett*, Assistant Attorney-general, and *B. H. Brauer*, County Attorney, for appellee.

MORLING, J.—The evidence shows, in substance, that the sheriff and assistants had a warrant to search defendant's premises. Defendant told them that he had no liquor, and to go ahead and search. Defendant was asked to open a safe in his blacksmith shop, which he did. Defendant took out and handed to the officers a half-pint bottle of intoxicating liquor, two thirds full. Defendant's evidence is to the effect that his son had had the earache; that the physician recommended that defendant get some alcohol with which to treat it; that defendant, without any prescription, did get from a druggist the bottle of alcohol; that defendant bought it only for medicinal purposes, and used it for no other.

At the time of the search, situated about a block and a half from his blacksmith shop, defendant had chicken grounds, of about a half acre, fenced, and having on them chicken coop and well. On three sides of the chicken yard were streets, and on the other, a railroad track. The officers went from the blacksmith shop to the chicken grounds, and there found two pint bottles in a chicken nest, covered with straw. The bottles were full of intoxicating liquor. Defendant testified that he had **not**

before seen those bottles; did not know of them, or that they were on his property, until they were found by the officers. He offered evidence that he raised chickens for show purposes; that the chicken yard was never kept locked; that the chicken coop was always open; that men working for the railroad company, in the stockyards, and for the waterworks, were seen in and around the chicken coop and lot many times.

I. The sheriff took possession of the bottles, and labeled them: "Seized in Fred Christensen shop in the safe" (and "from Fred Christensen in chicken nest in chicken house,")

"July 29, 1925, H. W. B." Because of these labels, the defendant objected to the reception of the bottles in evidence. The court, in overruling the objections, instructed the jury that the labels were not to be considered by them, and that the only thing in evidence in connection with the exhibits was the bottles themselves, and their contents. There was no error and no prejudice.

II. The justice who issued the search warrant was not a witness before the grand jury. He was called at the trial, and, over objection, identified his transcript of the search warrant
proceedings. The transcript was admitted over objection. Afterwards, the court struck from the record the justice's testimony and the transcript, and instructed the jury not to take such transcript or testimony into consideration. There was no prejudice.

III. The defendant, at the conclusion of the introduction of evidence in behalf of the State, moved the court to require the State to elect whether it would proceed as to the possession
of the liquor found in the blacksmith shop or as to the possession of that found in the chicken coop. The indictment was for the illegal possession of "three pints of alcohol or moonshine contained in half-pint bottles, with intent," etc. The indictment did not distinguish between the bottles in respect to the time or the place of their possession, or otherwise. The particular location of either or all of the parcels of liquor in defendant's possession was not of the essence of the offense charged, and was not specified in the indictment. Possession may be quite transitory and

variable in place. The two properties, the blacksmith shop and the chicken coop, were but a short distance apart, both owned and operated by the defendant, and in his possession. Hence the bottles found therein were in his possession. That one parcel of liquor might be found on defendant's person, or on one shelf, or in one room or building, and another parcel in another place (it all being in defendant's possession), does not make the possession of one a distinct and separate offense from that of the possession of the other. *State v. Cahalan*, 204 Iowa 410. The precise question presented is whether the court erred, on the record before it, in overruling the motion to elect. The court was neither by request to charge nor in any other way asked to differentiate for any purpose the case of the one bottle from that of the others. See, also, *State v. Reinhard*, 202 Iowa 168. There was no error.

IV. Defendant contends that the court did not submit his theory of the case to the jury, in that the court did not instruct the jury that, if someone else placed the liquor in the nests, without defendant's knowledge or consent, defendant would not be guilty. Defendant does not, in this connection, contend that the court erred in the instructions which were actually given. He made no request for further instructions. The failure of the court to more fully instruct on defendant's theory was not, in the absence of a request, error. *State v. Kendall*, 200 Iowa 483.

V. The court charged the jury that full and satisfactory proof of guilt was required; that the proof must be inconsistent with any other rational theory. If, upon comparing the whole evidence and carefully considering the case, the jurors were not firmly and abidingly satisfied of defendant's guilt, then the doubt was a reasonable doubt, and the jury should acquit. Defendant argues that the instructions should have required, but did not require, the jury to take into account the lack of evidence, in determining whether or not there was a reasonable doubt. The instruction is not open to this criticism. *State v. Boyd*, 199 Iowa 1206; *State v. Bogossian*, 198 Iowa 972. Furthermore, we have declined to consider such objection as ground for reversal.

*State v. Tennant,* 204 Iowa 130; *State v. Ritchie,* 196 Iowa 352. See *State v. Patrick,* 201 Iowa 368.

We find no error, and the judgment is—*Affirmed.*

EVANS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.